# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY (AS SUCCESSOR-IN-INTEREST TO UNDERWRITERS INDEMNITY COMPANY),<br>　　　　Plaintiff,<br><br>v.<br><br>WAINOCO OIL & GAS COMPANY AND FRONTIER OIL CORPORATION,<br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-04-0553 |

## MEMORANDUM AND ORDER

Pending before the Court in this insurance coverage dispute is Defendants Wainoco

Oil & Gas Company ("Wainoco") and Frontier Oil Corporation's ("Frontier") Motion to

Dismiss or, in the Alternative, Stay Proceedings [Doc. # 5]. Plaintiff RLI Insurance

Company ("RLI") has filed a Response [Doc. # 8] and Frontier and Wainoco have replied

[Doc. # 9]. The motion is ripe for determination.[1] Having considered the parties'

submissions, the applicable legal authorities, and all matters of record, the Court concludes

Frontier and Wainoco's motion should be **granted** and this case should be **stayed**.

---

[1]　Defendant has also filed an Appendix to Defendants' Motion to Dismiss or, in the Alternative, Stay Proceedings [Doc. # 6]. RLI has filed an Affidavit of Molly Reagan Salazar in Support of RLI's Opposition to Motion to Dismiss, or, in the Alternative, Stay Proceedings [Doc. # 10] and a Supplemental Affidavit of Robert C. Christensen in Support of RLI's Opposition to Defendants' Motion to Dismiss or, in the Alternative, Stay Proceedings [Doc. # 11].

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Underwriters Indemnity Company ("UIC"), the predecessor-in-interest to RLI, entered into four insurance contracts (the "Insurance Contracts"), a primary policy, two umbrella policies, and an excess policy, with Wainoco Oil Corporation (now allegedly known as Frontier which is the parent of Defendant Wainoco Oil & Gas Company[2]) covering the period from October 1987 to October 1989.[3]  UIC was a Texas-based insurer, incorporated under Texas law and headquartered in Houston, Texas at the time of the contracts.[4]  Wainoco Oil Corporation, the named insured, also had its principal place of business in Houston, Texas.[5]  Each of the insurance contracts was issued through a Texas broker or "producer."[6]

Defendant Frontier alleges that it is the name under which Wainoco Oil Corporation

---

[2]  *See* Frontier and Wainoco's motion, at 3.

[3]  RLI's Complaint for Declaratory Judgment ("RLI's Complaint") [Doc. # 1], ¶ 9.  The primary policy was a one year policy commencing October 1, 1987.  The first of two consecutive one year umbrella policies commenced October 1, 1987, and one excess policy commenced October 1, 1988.  *Id.*

[4]  Exhibit B to RLI's Response, Affidavit of Randy D. Little ("Little Affidavit"), ¶ 4; *see also* Exhibit 1 to Little Affidavit.

[5]  Little Affidavit, ¶ 5.

[6]  *Id.*, ¶ 5.

2

is now doing business.[7] Frontier is a Wyoming corporation but its principal place of business is in Houston, Texas.[8]

The Insurance Contracts provide coverage, subject to their terms, conditions, limitations, and exclusions, for Wainoco Oil Corporation's actual or alleged liability to third parties who assert certain lawsuits against Wainoco Oil Corporation. RLI has succeeded to UIC's rights and obligations under each of the Insurance Contracts.[9]

Defendants Frontier and Wainoco have been named, with others, as defendants in five pending actions in the Superior Court of California for the County of Los Angeles (the "Underlying Actions"), the first of which was filed on June 9, 2003.[10] Generally, the Underlying Actions allege that Frontier and Wainoco are responsible for the release of toxic chemicals in and around Beverly Hills High School, causing bodily injury to certain students, employees, and others present at the high school across several decades of exposure. During the ten year period of 1985 to 1995, Wainoco operated oil and gas production facilities on the Beverly Hills High campus pursuant to an oil and gas lease. The Underlying Actions allege that Frontier guaranteed Wainoco's obligations under the lease.

---

[7]     *See* California Coverage Action Complaint, ¶ 51 ("During the period in which Wainoco conducted operations on the Beverly Hills High School campus, Frontier (then known as Wainoco Oil Corporation) and Wainoco purchased commercial general liability coverage....").

[8]     Exhibit B to Frontier and Wainoco's Motion, Affidavit of Clyde M. Hettrick ("Hettrick Affidavit"), Exhibit 4 ("California Coverage Action Complaint"), ¶ 14.

[9]     RLI's Complaint, ¶ 9.

[10]    *Id.*, ¶ 11.

During this same period, Frontier had in excess of 45 primary, umbrella and excess policies, issued by at least 15 insurance groups, including RLI.[11] In late June and early July, 2003, Frontier and Wainoco asked these insurers to defend them in the Underlying Actions and indemnify them as to any settlements of or judgments in the lawsuits.[12]

Frontier's and Wainoco's primary insurers failed to offer any affirmative assistance to Frontier and Wainoco or otherwise provide them a defense. Without any assistance from their insurers, Frontier and Wainoco have paid the costs of their own defense in the Underlying Actions, which now exceeds $1.1 million.[13]

RLI was among the primary insurers to which Frontier and Wainoco turned for assistance regarding the Underlying Actions. On July 28, 2003, counsel for Frontier and Wainoco received a letter from MC Settlement Services, the third party claims administrator for RLI Insurance. In its letter, MC Settlement Services indicated that it would be examining and managing the claims related to the Underlying Actions.[14] On or about September 10, 2003, one of counsel for Frontier and Wainoco received a letter from the law firm of Morison-Knox, Holden, Melendez & Prough ("Morison-Knox"), based in California,

---

[11]     Hettrick Affidavit, ¶ 6.

[12]     Exhibit A to RLI's Response, Affidavit of Kent W. Robinson ("Robinson Affidavit"), ¶ 7.

[13]     *Id.*, ¶ 8.

[14]     *Id.*, ¶ 10.

advising that it would be involved in RLI's continuing claim investigation.[15] Morison-Knox is one of RLI's counsel in this case.

As additional Underlying Actions were filed, counsel for Frontier and Wainoco provided notice of those lawsuits to Morison-Knox as well as other representatives of the insurers of Frontier and Wainoco. On October 3, 2003, Morison-Knox advised one of counsel for Frontier and Wainoco that RLI would "investigate these notices and tenders and will respond more fully in the near future."[16] Three more months passed with no further action by RLI or any of the other primary insurers.

On January 29, 2004, Clyde M. Hettrick, one of counsel for Frontier and Wainoco, wrote to all of Frontier and Wainoco's known general liability insurers for the period 1984-1995, and asked that each insurer state its coverage position with respect to the Underlying Actions.[17] In the letter, Hettrick wrote that the insurers are required under California law to state their coverage positions within 40 days of being notified of the claims by the insureds, or explain to the insureds every 30 days why a coverage determination could not yet be made.[18] Also on January 29, 2004, Hettrick sent a letter to the insurers that had issued

---

[15]     *Id.*, ¶ 11.

[16]     *Id.*, ¶ 12.

[17]     Hettrick Affidavit, ¶ 3-4.

[18]     *Id.*

primary and umbrella liability insurance policies, including RLI, and demanded that the insurers provide Frontier and Wainoco a defense for the Underlying Actions.[19]

On February 12, 2004, RLI filed this case under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that it has no duty to defend and indemnify Frontier and Wainoco in the Underlying Actions.[20] The following day, RLI notified Frontier and Wainoco by letter that it was denying coverage.[21]

On February 25, 2004, Frontier and Wainoco filed suit in a California state court against all of its primary insurers, including RLI, responsible for the primary insurance policies covering the period 1984-1995 (the "California Coverage Action"). In the California Coverage Action, Frontier and Wainoco assert two causes of action: (1) a request for a declaratory judgment that all its primary insurers, including RLI, owe a duty to defend Frontier and Wainoco in the Underlying Actions, and (2) breach of contract against RLI and Royal & Sun Alliance Insurance Company of Canada, the two insurers who have expressly denied coverage.[22] That lawsuit currently is pending.

Frontier and Wainoco move to dismiss this case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and under the Declaratory Judgment Act, 28 U.S.C. § 2201, or, in the alternative, to stay the proceedings.

---

[19]     *Id.,* ¶ 5.

[20]     RLI's Complaint, ¶¶ 21-43.

[21]     Robinson Affidavit, ¶ 14; Exhibit 5 to Robinson Affidavit.

[22]     *See* California Coverage Action Complaint, ¶¶ 67-74.

## II. DISCUSSION

### A. Dismissal under Rule 12(b)(1)

A defendant may challenge a court's jurisdiction over a claim through a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. In examining a motion pursuant to Federal Rule of Civil Procedure 12(b)(1), the district court is empowered to consider matters of fact which may be in dispute. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Id.*

Dismissal under Rule 12(b)(1) is inappropriate in this case. Diversity jurisdiction exists. *See* 28 U.S.C. § 1332. RLI is an Illinois corporation with its principal place of business in Illinois. Neither Frontier nor Wainoco are Illinois corporations. The amount in controversy in this case exceeds $75,000. Furthermore, as discussed fully in Section II.C *infra,* this case presents a justiciable controversy. Therefore, Frontier and Wainoco's motion to dismiss under Rule 12(b)(1) is denied.

### B. Dismissal under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Manguno v. Prudential Property and Cas. Ins.*

*Co.*, 276 F.3d 720, 725 (5th Cir. 2002). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Id.* The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id. (quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Put differently, a claim is legally insufficient under Rule 12(b)(6) "only if there is no set of facts that could be proven consistent with the allegations in the complaint that would entitle the plaintiff to relief." *Power Entertainment, Inc. v. Nat'l Football League Properties, Inc.*, 151 F.3d 247, 249 (5th Cir. 1998). The Court must determine whether the complaint states any valid claim for relief in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Furthermore, a plaintiff must plead specific facts, not mere conclusory allegations or unwarranted deductions of fact, in order to avoid dismissal for failure to state a claim. *Id.*

RLI's Complaint clearly states a claim upon which relief may be granted. RLI requests a declaratory judgment that it owes no duty to defend or indemnify Frontier and Wainoco in the Underlying Actions. RLI cites to pertinent provisions of the insurance policies in issue in support of its position. Thus, if Plaintiff's positions are correct, this Court can grant relief upon such a claim.

**C. The Declaratory Judgment Act, 28 U.S.C. § 2201(a) and *Brillhart* Abstention**

Frontier and Wainoco primarily seek to obtain dismissal or a stay of this case pursuant to the broad discretion afforded this Court under the Declaratory Judgment Act. *See Brillhart v. Excess Ins. Co. v. Am.*, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court raising the same issues, not governed by federal law, between the same parties. Gratuitous intervention with the orderly and comprehensive disposition of a state court litigation should be avoided."). "*Brillhart* abstention is applicable "[w]hen a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action." *Black Sea Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000) (citing *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994)). As explained below, such a course is appropriate in this case.

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act, 28 U.S.C. § 2201(a), 'is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant.'" *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952))). "'The Declaratory Judgment

Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton*, 515 U.S. at 286). "'In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'" *Id.* (quoting *Wilton*, 515 U.S. at 289). "When all is said and done . . . 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Wilton*, 515 U.S. at 287 (citing *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243 (1952)).

"When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "First, the court must determine whether the declaratory action is justiciable. Typically, this becomes a question of whether 'an actual controversy' exists between the parties to the action." *Id.* (citing *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27-28 (5th Cir. 1989)); *see also American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) ("A federal court may not issue a declaratory judgment unless there exists an 'actual controversy.'") (citing *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941))).

"Second, if it has jurisdiction, then the district court must resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Orix*, 212 F.3d at 895 (citing *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir.

1993)). "The Fifth Circuit has decided that when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction — providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act." *Travelers Ins. Co.*, 996 F.2d at 776 (citing *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988)). "Thus, as a general rule, the district court may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, *and* 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." *Id.* (citing *Jackson*, 862 F.2d at 506).

"Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix*, 212 F.3d at 895 (citing *Louisiana Farm Bureau Fed'n Inc.*, 996 F.2d at 778). The Court turns to an analysis of these steps in light of the facts at bar.

In accordance with the first step in *Orix*, the Court first determines whether this declaratory judgment action presents an actual controversy ripe for adjudication. RLI makes requests for two declarations: that it has no duty to defend Frontier and Wainoco in the Underlying Actions, and that it has no duty to indemnify Frontier and Wainoco in connection with the Underlying Actions.[23] The duty to defend question clearly is ripe for review. Frontier and Wainoco are defending several Underlying Actions in which Frontier and

---

[23]     *See* RLI's Complaint, ¶¶ 21, 29, 31, and 43.

Wainoco claim RLI owes a duty to provide a defense. RLI disagrees and has refused to provide a defense. RLI's duty to defend is a ripe, not hypothetical, controversy.

The issue of ripeness of the duty to indemnify presents a closer question because no judgment has yet been entered in the Underlying Actions. However, Fifth Circuit precedent makes clear that "[a]n actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment." *Bailey*, 133 F.3d at 368 (holding no duty to defend existed, and also holding district court "had jurisdiction to rule on the duty to indemnify despite the fact that the underlying state court suit had not yet reached final judgment") (citing *Western Heritage Ins. Co. v. River Ent'mt*, 998 F.2d 311, 315 (5th Cir. 1993)). In this case, the question of RLI's duty to indemnify Frontier and Wainoco presents a justiciable controversy, if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Northfield Ins. Co. v. Loving Home Care, Inc.*, —S.W.3d— , 2004 WL 547938, *11 (5th Cir. Mar. 22, 2004) (quoting *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). Therefore, at this point in the proceedings, before the duty to defend has been decided, the duty to indemnify presents a justiciable controversy. *See Loving Home Care*, 2004 WL 547938, at *11 ("[W]hen the district court ruled there was a duty to defend, then the duty to indemnify became nonjusticiable.").

The Court next must determine the second *Orix* factor, whether it has the authority to enter a declaratory judgment in this suit. As stated above, when there previously has been

filed a state court suit involving the same issues which cannot be enjoined by the Anti-Injunction Act, federal courts do not have the authority to hear a declaratory judgment action. *Orix*, 212 F.3d at 895. This Court has the authority to decide this declaratory judgment action because Frontier and Wainoco had not previously filed a cause of action in state court against the declaratory plaintiff, RLI. The California Coverage Action was filed after RLI filed this suit.

This case presents a justiciable controversy, and the Court has the authority to render a decision in this case. Therefore, the Court now must decide the third *Orix* factor, whether to exercise its "unique and substantial" discretion to hear the case. *Wilton*, 515 U.S. at 286. The Fifth Circuit has identified seven nonexclusive factors for a district court to consider in deciding whether to exercise its broad discretion to decide or dismiss a declaratory judgment action. *See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1995) (the "*Trejo* Factors"). These factors are:

(1)     whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2)     whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3)     whether the plaintiff engaged in forum shopping in bringing the suit;

(4)     whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5)     whether the federal court is a convenient forum for the parties and witnesses;

(6)     whether retaining the lawsuit would serve the purposes of judicial economy; and

(7)     whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel suit between the same parties is pending.[24]

*Id.* at 590-91; *see also Sherwin-Williams*, 343 F.3d at 388; *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001); *Louisiana Farm Bureau Fed'n*, 996 F.2d at 778. The Court analyzes these factors in light of the facts of this case below.

### *Trejo* Factor 1:  Pending State Litigation

The first *Trejo* factor asks whether there is a pending state suit in which all matters in dispute may be fully litigated.  Frontier and Wainoco contend the California Coverage Action provides such a forum.  RLI argues the California Coverage Action is not a forum in which all matters in dispute may be fully litigated because the California Coverage Action involves only the duty to defend, and not the duty to indemnify.  RLI further argues that the California Coverage Action implicates only one of four insurance policies in issue: the primary policy.  RLI also contends that Frontier and Wainoco's counterclaim for breach of contract must be asserted here in Texas as a compulsory counterclaim.

Frontier and Wainoco respond that, given the preliminary nature of the Underlying Actions, any attempt to answer indemnity questions at this time in the case at bar (or elsewhere) is premature and poses a substantial risk of prejudice to them as defendants in the Underlying Actions.  Frontier and Wainoco further argue that the lack of a pending claim

---

[24]     The seventh *Trejo* factor is not implicated in this case.

regarding the duty to indemnify in the California Coverage Action is immaterial because a ruling in favor of RLI that no duty to defend exists also will resolve the indemnity issue. Third, they argue that their primary insurers are present in California, thereby presenting the possibility of complete relief rather than piecemeal litigation.

"A district court may decline to decide 'a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" *Sherwin Williams*, 343 F.3d at 392 (quoting *Brillhart*, 316 U.S. at 495). "The lack of a pending parallel state proceeding should not automatically require a district court to decide a declaratory judgment action, just as the presence of a related state proceeding does not automatically require a district court to dismiss a federal declaratory judgment action," *Sherwin-Williams*, 343 F.3d at 393, but "the extent of similarity is a factor in the decision whether to exercise discretion to hear a declaratory action." *See id.* (citing *United States v. Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002)).

The Court finds that this factor weighs in favor of dismissal or stay. The California Coverage Action presents a parallel state proceeding in which all matters in controversy here may be fully litigated.[25] Frontier and Wainoco's operative pleading in the California Coverage Action names RLI as a defendant and asserts causes of action for a declaratory

---

[25]    That the California Coverage Action was filed two weeks after RLI filed suit here is of no moment. *See Wilton*, 515 U.S. at 280 (affirming stay of declaratory judgment action in insurance coverage dispute in favor of later-filed state suit); *Houston General Ins. Co. v. Chickasha Cotton Oil Co.*, 1997 WL 760499, *1 (N.D. Tex. 1997) (Fish, J.) (dismissing declaratory judgment action in an insurance coverage dispute in favor of later-filed state court suit).

judgment regarding the duty to defend against all of its eight primary insurers,[26] and breach of contract against RLI and another insurer who has denied coverage, Royal & Sun Alliance Insurance Company of Canada. While Frontier and Wainoco presently have not asserted a claim regarding the duty to indemnify in the California Coverage Action, there is no reason that claim cannot be added by these insureds in the state proceedings.[27] The indemnity issue also may be asserted by RLI in California in a declaratory judgment counterclaim. Similarly, though the California Coverage Action presently involves only the primary policy issued by RLI, there is no reason why the same issues regarding the umbrella and excess liability policies may not also be resolved in that action, either in a declaratory judgment counterclaim by RLI, or as an affirmative claim by Frontier and Wainoco at an appropriate point in the California proceedings. Therefore, while the actions are at present not perfectly parallel, the California Coverage Action undoubtedly provides an "opportunity for ventilation of the same state law issues" as those present in this case. *Wilton*, 515 U.S. at 290.[28]

---

[26]    The California Coverage Action complaint also names Does 1-100.

[27]    RLI has not argued that the California court does not have personal jurisdiction over it.

[28]    The Court rejects RLI's argument that Frontier and Wainoco's failure to plead its compulsory counterclaim for breach of contract here should not be "rewarded with a dismissal." RLI's Response, at 14. While Frontier and Wainoco may have been required under Rule 13(a) to file their breach of contract claim in an answer to RLI's complaint, they have not yet answered, instead electing to file the instant motion to dismiss. Furthermore, RLI's argument proves too much. Any time a pending state action informs a federal court's decision to abstain from hearing a declaratory judgment action, the pending state action likely involves claims that arguably are "compulsory counterclaims" in the federal action.

***Trejo* Factors 2 and 3: Filing in Anticipation of Suit by Defendant and Forum Shopping**

The second *Trejo* factor is whether the plaintiff filed suit in anticipation of a lawsuit by the defendant. The third factor is related – whether the plaintiff engaged in forum shopping in bringing this suit. "Merely filing a declaratory judgment action in federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams*, 343 F.3d at 391. To justify dismissal, the declaratory judgment plaintiff must have engaged in "'procedural fencing' undermining 'the wholesome purposes' of declaratory actions." *Id.* at 397 (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983)).

These factors are neutral in the case at bar. It appears to the Court that both RLI and Frontier and Wainoco have engaged in "procedural fencing" in filing their respective suits. In California state court, declaratory judgment actions concerning the duty to defend and the duty to indemnify can be stayed pending the outcome of the underlying suit. "To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. of Cal. v. The Superior Court of Los Angeles County*, 6 Cal. 4th 287, 301 (Cal. 1993) (citations omitted). Indeed, Frontier and Wainoco state their intent to request such a stay in their operative pleading in the California Coverage Action.[29] It is unclear whether such a

---

[29]     California Coverage Action Complaint, ¶ 11 ("Frontier and Wainoco will seek an order
(continued...)

stay actually is available to Frontier and Wainoco, especially if Texas law applies to this dispute, as RLI contends.[30] In any event, this Court also has the option to impose a stay or to defer its determinations, particularly indemnification rulings, until the underlying litigation is more mature. Nevertheless, a desire to avoid such a stay appears to have been a factor in RLI's decision to file suit here,[31] and the desire to take advantage of this procedural mechanism likely informed Frontier and Wainoco's decision to file its Coverage Action in California. Therefore, this factor is neutral.

### *Trejo* Factor 4: Inequities

The fourth factor is whether there are inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums. This factor focuses on the inequities to the insured in allowing this Texas case to proceed. The declaratory plaintiff in the case at bar is RLI. There is little inequity to RLI to require all the coverage determinations to occur in California where the subject of the insurance (the site of the alleged wrongs) is located. RLI is not a Texas company and the insureds prefer California as the litigation situs. The

---

[29]    (...continued)
staying all parties in this action or other coverage actions from seeking adjudication of factual issues also at issue in one or more of the *Beverly Hills High* lawsuits in order to avoid prejudicing Frontier's and Wainoco's defense of those actions.").

[30]    Texas is an "eight corners" state unlike California. Under California law, "facts extrinsic to the complaint may also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Modern Dev. Co. v. Navigators Ins. Co.*, 4 Cal. Rptr. 3d 528, 535 (Cal. Ct. App. 2003); *see also Montrose Chem Corp.*, 6 Cal. 4th at 295 (citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (Cal. 1966)).

[31]    *See* RLI's Response at 21 ("Given the multiple lawsuits, hundreds of plaintiffs, and complex issues raised therein, such a motion (uniquely available under California procedural law) would effectively freeze the coverage litigation for untold years.").

Underlying Actions implicate rights and obligations of numerous liability insurers. The vast majority of these insurers are defendants in the California Coverage Action. This factor weighs in favor of dismissal or stay.

There is a possibility, but far from a certainty, that the California Coverage Action will be stayed pending the outcome of the Underlying Actions.[32] Regardless, it is more equitable for all of the insurers allegedly required to provide a defense to Frontier and Wainoco to be subject to the same procedural rules in their coverage disputes with the insureds. The California Coverage Action provides an excellent forum to achieve this equity. While there has been no showing that Frontier and Wainoco could not implead all of the other primary insurers into this action,[33] such a course makes little sense, when the California Coverage Action is pending in the same forum as the Underlying Actions, and the primary insurers already are present in that action.

---

[32]  It is possible that the California court would determine the RLI's duty to defend before the Underlying Actions reach judgment. The California court will impose a stay if "inconsistent factual determinations" "could prejudice the insured," as is the case when "the coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp.*, 6 Cal. 4th at 301. If Texas law applies to the coverage dispute between RLI and Frontier and Wainoco, as RLI argues convincingly and Frontier and Wainoco do not meaningfully dispute, the coverage question will not turn on facts to be litigated in the underlying action, and, thus, a stay would not be appropriate.

[33]  Frontier and Wainoco raise the issue whether joinder of all insurers in this action would oust this Court of diversity jurisdiction. Because the citizenship of all insurers is not in the record, the Court does not address this issue. For purposes of this ruling, it is sufficient that the primary insurers, including RLI, are present in the California Coverage Action.

### *Trejo* Factor 5: Convenience of Parties and Witnesses

The fifth factor is whether the federal court is a convenient forum for the parties and witnesses. This factor is neutral. With respect to the determination of the duty to defend under any one company's insurance policy, there are relatively few necessary witnesses and documents. RLI represents that all its documents and witnesses are available here. However, with respect to the duty to indemnify, which RLI also seeks to have decided by this Court, relevant witnesses and documents are in California. While witnesses and documents required for the duty to indemnify only become an issue if RLI is first found to have a duty to defend, the determination of the duty to indemnify, if necessary, turns on factual findings in the Underlying Actions. The witnesses and documents relevant to such findings are undoubtedly located in California.[34]

### *Trejo* Factor 6: Judicial Economy

The next factor is whether prosecution of this lawsuit would serve the purposes of judicial economy. Frontier and Wainoco contend the California Coverage Action will resolve the issues raised in RLI's federal complaint regarding the duty to defend, and that the duty to indemnify cannot be resolved now in any coverage action. RLI contends that judicial economy is not served by dismissing this suit. Delay instead will occur, argues RLI, in the California action because the insureds have stated their intention to stay the California action under the *Montrose* doctrine.

---

[34]     Even if this were not the case, RLI (an Illinois company) has demonstrated no serious inconvenience associated with litigating the coverage issues in California.

The Court finds that this factor weighs in favor of dismissal or stay. While this Court might elect to resolve the question of RLI's duty to defend more expeditiously than the California court, RLI's duty to defend in this regard is only a small part of the overall coverage dispute, and, most likely, there are many overlapping issues among the various insurers' contracts of insurance. Yet, controversies regarding the many other insurers will not be settled by this lawsuit.[35] On the other hand, the California Coverage Action presents a forum in which the duties of all of Frontier and Wainoco's insurers can be determined. Even if some or all of the California Coverage Action is stayed until the conclusion of the Underlying Actions, which is not a certainty,[36] once the stay is lifted, the entire insurance dispute may be determined in one forum.

It would not serve the purpose of judicial economy to have two courts in different fora decide the same issues when the issues easily can and should be determined in one forum. Because the issues involved are issues of state law, there is no reason why this federal Court is in a better position to decide this case than the state court in California. RLI suggests that this Court's familiarity with Texas law, which likely governs the coverage question in this case, provides a reason to allow this case to proceed irrespective of the California Coverage Action. This argument is not persuasive in this day and age of electronic research. The California court has at its disposal all the necessary tools to properly determine the rights and

---

[35]    While RLI or the insureds theoretically might attempt to implead the insurers in the California Coverage Action in this case, such a course is unnecessarily duplicative and cumbersome, because the insurers are already in litigation on these issues in California.

[36]    *See supra* note 32.

obligations of the parties under Texas law, if that law does in fact apply. The possibility that this Court has familiarity with Texas law does not outweigh the factors militating in favor of dismissal. This Court's deference to a pending state action in which all of the primary insurers are joined will conserve judicial resources by allowing one court to decide the issues in this case that overlap substantially with the insured's interests under other insurance policies and with other insurers' interests in participating in the initial decisions about the interpretation of overlapping insurance policy terminology.

All of the *Trejo* factors are neutral or militate in favor of yielding to the California Coverage Action. Therefore, the Court concludes it is appropriate to exercise the broad discretion afforded it under the Declaratory Judgment Act and *Brillhart v. Excess Ins. Co. v. Am.*, 316 U.S. 491 (1942), to refrain from deciding this case.

## III. **PROPER COURSE OF THIS CASE**

The Court has concluded that proceedings in this case should yield to the California Coverage Action. The next issue is whether dismissal or stay is the appropriate resolution of this motion. There appears no reason why the California Coverage Action will not address completely the issues raised in this case. However, the Supreme Court has suggested that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2. In an abundance of caution, the Court will impose a stay, rather than dismissal, of this case.

## IV. CONCLUSION AND ORDER

For the reasons explained above, Defendants' Motion to Dismiss, or in the Alternative, Stay Proceedings has merit. It is therefore

**ORDERED** that Defendants' Motion to Dismiss, or in the Alternative, Stay Proceedings [Doc. # 5] is **GRANTED.** It is further

**ORDERED** that this case is **STAYED and ADMINISTRATIVELY CLOSED.**

SIGNED at Houston, Texas, this 28th day of April 2004

NANCY F. ATLAS
UNITED STATES DISTRICT JUDGE